[No. 11842.   Department One.   August 13, 1914.]

UNITED IRON WORKS, *Appellant*, v. MILLARD S. HOSEA *et al.*, *Respondents.*[1]

MECHANICS' LIENS — CONTRACTS — PERFORMANCE — ACCEPTANCE OF WORK.   Where plaintiff's assignor agreed with defendant to furnish materials and install a refrigerating plant, and warranted the plant to furnish a specified amount of refrigeration and to work to the satisfaction of defendant, but the plant proved defective and, after repeated effort, any attempt to put it in working order was abandoned, the fact that defendant mortgaged the premises while the plant was being installed and that he later conveyed the premises pending suit to foreclose a lien thereon, did not constitute an acceptance of the work.

SAME — DEFAULT OF CONTRACTOR — LIABILITY OF OWNER FOR PARTS USED.   Where contractors installed a refrigerating plant under a contract guaranteeing a certain amount of refrigeration and that the plant would work to the satisfaction of the purchaser, but the plant proved defective and all attempts to put it in working order were finally abandoned, the contractors are not entitled to recover the entire purchase price because certain parts of the plant were retained and used by the purchaser in the necessary installation of another plant, but can only recover for the parts retained and used in the installation of the second plant.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered July 9, 1913, upon findings in favor of the defendants, in an action to foreclose a mechanics' lien.   Affirmed.

[1]Reported in 142 Pac. 673.

*B. B. Adams* and *C. D. Randall,* for appellant.

*Scott & Campbell,* for respondents Hosea.

*Don F. Kizer,* for respondent Stanton Company.

MAIN, J.—This is an appeal from a judgment of the superior court denying the foreclosure of a claim for lien.

The trial court found the facts to be substantially as follows: Watson & Graham, copartners, on the 7th day of June, 1912, entered into an agreement with the defendant Millard S. Hosea, whereby they agreed to furnish materials and install, in a building owned by Hosea, a refrigerating plant of sufficient size to furnish ample freezing capacity for two cooling rooms and two counters of given dimensions; and in addition thereto, thirty per cent. more refrigeration than the amount required to keep the rooms and counters at a proper temperature. The plant was guaranteed, not only to furnish the amount of refrigeration specified, but to work to the satisfaction of Hosea. The contract price was $1,150.

After making the agreement and while the plant was in the process of installation, but before it was completed, Hosea and wife conveyed the lands and premises upon which the refrigerating plant was being installed to E. H. Stanton Company, a corporation, by warranty deed, for the purpose of securing a loan in the sum of $25,000. The installation of the plant was commenced during the early part of June, and was completed about the last of the same month. The plant was not sufficient in size or capacity to meet the requirements of the contract, was of inferior material, and not properly installed. It never worked satisfactorily nor furnished sufficient refrigeration for the purposes agreed upon. Watson & Graham attempted to make it run practically every day from the date of its installation for a period of five or six weeks. After repeated attempts to make the plant work, they abandoned any attempt to get it into working order, and so notified Hosea. The purpose of the defendant Hosea in having the plant installed was to keep fresh meats and other perish-

able commodities at low temperature, the building being used as a public market. Because of the defective plant and its defective installation, this purpose was not accomplished. It became necessary for Hosea to tear out the greater portion of the plant and install a different plant in lieu thereof. The only portion of the plant installed by Watson & Graham that the defendant Hosea could use and did use, were seven hundred feet of pipe, condenser, oil trap, ammonia receiver, two gauges, connections and valves, which were found to be of the value of $257. The balance of the plant was utterly worthless and was torn out and tendered back to Watson & Graham. Before the completion of the plant, $117.95 had been paid as a part payment upon the contract price.

On the 30th day of August, 1912, Watson & Graham filed for record, in the office of the auditor of Spokane county, a claim for lien upon the building and the lots upon which it stood, for the sum of $1,197. Before the commencement of the action, this claim for lien was assigned to the plaintiff. A personal judgment was entered in favor of the plaintiff and against the defendants Hosea and wife for the sum of $139.05, this being the balance which was due for the materials furnished by Watson & Graham and which were used when the plant was installed by another firm. The plaintiff appeals.

It is claimed that Hosea and wife, by mortgaging the property during the time the plant was being installed, thereby exercised acts of ownership over it which constituted an acceptance. Obviously this contention cannot be sustained. The deed was made only for the purpose of security and was executed and delivered prior to the time when the acceptance of the plant was due. By the contract, the plant was guaranteed and was not to be accepted until it worked to the satisfaction of Hosea. Neither did the conveyance of the premises while the suit was pending constitute an acceptance. Hosea notified Watson & Graham to either make the plant work or remove it. They did neither. Prior to the conveyance, the first plant as installed by Watson & Graham had

been removed and the second one had been put in place by another firm. The trial court did not err in refusing to enter judgment for the entire purchase price of the refrigerating plant because certain parts thereof were retained and used when the second plant was installed. Watson & Graham, as the court found and as the evidence shows, abandoned any attempt to make the plant which they installed work. The parts of the plant removed were taken to the E. H. Stanton Company for the purpose of repair and adjustment. It was there found impossible to make the plant work. Thereupon the second plant was installed, using such parts of the first plant as had not been removed. It seems reasonably plain that, under the facts, Hosea would have the right to remove all those portions of the plant which could not be utilized, and be held to pay for only those portions which he retained and used in connection with the second installation.

The judgment will be affirmed.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.